UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| POWER CONSTRUCTION COMPANY, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.:2018-cv-4872 |
| ) | |
| THE BURLINGTON INSURANCE ) | |
| COMPANY and AXIS SPECIALTY LIMITED, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## COMPLAINT

NOW COMES Plaintiff, Power Construction Company, LLC ("Power"), by and through its attorneys, Harris Winick Harris, LLP, and for its Complaint against the Defendants The Burlington Insurance Company ("TBIC") and Axis Specialty Limited ("Axis") alleges the following:

## PARTIES

1. Power Construction Company LLC is an Illinois limited liability corporation with its principal place of business at 8750 W. Bryn Mawr Avenue, Suite 500, Chicago, Illinois 60631. At all times relevant, Power Construction Company LLC was a general contractor.

2. TBIC is a North Carolina corporation with a principal place of business at 238 International Road, Burlington, NC 27215.

3. Axis is a Bermuda corporation with a principal place of business at 92 Pitts Bay Road AXIS House, Pembroke, HM 08.

## VENUE AND JURISDICTION

4. Jurisdiction is proper in this Court pursuant to 28 USC 1332 because there is complete diversity of citizenship, and the amount in controversy exceeds $75,000.

5. The Policies at issue in this dispute were entered into in Illinois. This Court accordingly has personal jurisdiction over all parties to this case to the extent they have any interest in the insurance policies at issue in this dispute.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

7. On or about November 10, 2003, Power and David Architectural Metals, Inc. ("David") entered into a Master Services Agreement.

8. David was a named insured under commercial general liability policies issued by TBIC designed as Policies No. HGL0010688, HGL0016769, and HGL0019524 (the "TBIC Policies").

9. David was a named insured under commercial excess liability policies issued by Axis designed as Policies Nos. AAU721146012005-8 to David (the "Axis Policies").

10. Power was named as an additional insured under the TBIC Policies for all work that David performed for Power.

11. Power was named as an additional insured under the Axis Policies for all work that David Architecture performed for Power.

### A. The Relevant Insurance Policies

12. The TBIC Policies each provide that they "will pay those sums that the insured becomes legally obligated to pay as damages because of '. . .property damage . . .'." (Section I, Coverages, Coverage A Bodily Injury and Property Damage Liability, 1. Insuring Agreement, a.)

13. The TBIC Policies all define "Property damage" to mean:

   a. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence" that caused it.

14. Each of the TBIC Policies further provide:

   b. This insurance applies to . . . "property damage" only if:

      (1) The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory"
      (2) The . . . . "property damage" occurs during the policy period . . . .

15. Each of the Axis Policies provide:

   1. Insuring Agreement
      a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which insurance provided under this Coverage Part applies.

16. The "retained limit" under each of the Axis Policies is one million dollars.

### B. The Underlying Action

15. On or about April 27, 2006, MCL CDC P21, LLC (the "Developer") engaged Power as a general contractor for the construction of a high-rise residential development (the "Project") on the property located at 505 N. McClurg Court in Chicago, Illinois (the "Property") pursuant to a written agreement entered into by and between Developer and Power.

16. On or about June 12, 2006, Power and David entered into a project specific agreement, subject to terms of the Master Services Agreement, for the Project pursuant to which David agreed to provide and install, among other things, balcony railings.

17. In or about December 30, 2015, Parkview at River East Condominium Association ("Parkview") filed a Complaint in the Circuit Court of Cook County against Power alleging that the Property was constructed with defects, which resulted in, among other things, the peeling of paint on the Project's balcony railings and damages to other components of the Project (the "Underlying Action").

18. Paragraph 23 of Parkview's Complaint alleges that:

> [t]he Defects that are the subject of this suit caused physical injury to the Condominium (i.e., altered the common elements of the Condominium in appearance, shape, color or other material dimension) ("Property Damage") after construction of the Condominium was completed from repeated exposure to substantially the same general harmful conditions. The Property Damage was an "accident" and resulted from an "occurrence" in that the defendants did not intend to cause the Defects in the Condominium, and the resulting Property Damage (such as damage to other building materials) was neither expected nor intended from their standpoint. On information and belief, MCL CDC P21 performed none of the construction work, and all work on the condominium was performed on its behalf. The work of Power's subcontractors that was damaged was performed on behalf of MCL CDC P21 and Power. The work of Power's subcontractors caused damage to other portions of the Condominium that was not work that was performed by that subcontractor.

19. The Property damage was caused by continuous or repeated exposure to substantially the same general harmful conditions.

20. Power did not know and did not intend that David would construct the railings with defects or with defective materials, Power did not expect the Property Damage, and Power neither intentionally nor accidently caused the Property Damage.

21. TBIC first became aware of an underlying claim related to the underlying property damage in or about 2012.

22. On information and belief, the property damage occurred after the Project's substantial completion, up to and including at least April 2016, and continued thereafter.

4

23. TBIC is defending David against the claims in the Underlying Action pursuant to one or more of the TBIC Policies.

24. On May 8, 2017, Power tendered its defense and indemnification from the Underlying Litigation to TBIC as an additional insured under the TBIC Policies.

25. On May 8, 2017, Power tendered its defense and indemnification from the Underlying Litigation to Axis as an additional insured under the Axis Policies. On or about May 30, 2017, Axis responded to Power's tender, advising Power that it did not have an obligation until the TBIC Policies were exhausted.

26. On or about June 20, 2017, TBIC responded to Power's tender of defense letter indicating it had hired experts and was "actively investigation the allegations" against David and was "actively pursuing" Weatherguard Building Products, Inc. for "participation in a global resolution."

27. On July 26, 2017, Power confirmed to TBIC that it received TBIC's response letter and set forth that Power would begin to provide the invoices for its defense to TBIC. Power advised TBIC of Power's agreement with Parkview to meet and discuss a potential resolution to the Underlying Action and Power invited TBIC to participate in the meeting.

28. Power tendered to TBIC its invoices for attorneys' fees related to the Underlying Action.

29. TBIC has failed to compensate Power for any of Power's attorneys' fees, costs, and expenses related to the Underlying Action.

30. Power repeatedly attempted to have TBIC participate in a settlement of the Underlying Action.

5

31. On or about June 20, 2018, Power reached a settlement agreement with the Plaintiff pursuant to which it will suffer damages exceeding $1.8 million.

32. TBIC has failed to pay those sums that Power is legally obligated to pay as damages because of property damage.

33. Power has suffered an ultimate net loss in excess of the retained limit of the AXIS policy because of injury or damage.

### COUNT I - BREACH OF CONTRACT AGAINST TBIC

34. Power incorporates and re-alleges Paragraphs 1-34 as if fully set forth herein.

35. Power performed all of its obligations under the TBIC Policies, with the exception of those obligations that have been waived, released, or rendered impossible by the acts or omissions of TBIC.

36. The defects in the Underlying Action are occasioned by or growing out of the execution or performance of David's work, and TBIC is required to defend and indemnify Power as an additional insured pursuant to the TBIC Policies issued to David.

37. The settlement of the Underlying Action is an amount that Power is legally obligated to pay as damages because of "property damage" as defined in the TBIC Policies.

38. TBIC materially breached the TBIC Policies because it has failed or refused to pay for Power's defense costs or any portion of the settlement in the Underlying Action on behalf of Power.

39. TBIC refused to acknowledge Power's prompt and repeated communications regarding a defense.

40. TBIC provided David with a defense in the Underlying Action, but refused to provide the same to Power.

41. TBIC refused to acknowledge or respond to Power's request for payment of the settlement in the Underlying Action.

42. TBIC's failure to pay Power's defense costs or indemnify Power for the settlement in the Underlying Agreement is vexatious and unreasonable.

WHEREFORE, Power respectfully requests this Honorable Court to enter a judgment in its favor and against TBIC including awarding Power (a) its attorneys' fees associated with the defense of the Underlying Action, (b) damages equal to policy limit(s) of the TBIC Policies related to those amounts Power was required to pay pursuant to the settlement of the Underlying Action, (c) its attorneys' fees, the statutory penalty and/or costs of suit incurred herein pursuant to 215 ILCS 5/155, the costs of this action, and such other and further relief as this Court may deem just and proper.

## COUNT II - BREACH OF CONTRACT AGAINST AXIS

43. Power incorporates and re-alleges Paragraphs 1-42 as if fully set forth herein.

44. Power performed all of its obligations under the Axis Policies, with the exception of those obligations that have been waived, released, or rendered impossible by the acts or omissions of Axis.

45. The alleged defects in the Underlying Action are occasioned by or growing out of the execution or performance of David's Work, and Axis is required to indemnify Power as an additional insured pursuant to the Axis Policies issued to David.

46. Power has sustained an ultimate net loss in excess of the retained limit because of injury or damage pursuant to the settlement of the Underlying Action.

47. Axis materially breached the TBIC Policies because it has failed or refused to pay for Power's ultimate net loss in excess of the retained limit.

WHEREFORE, Power respectfully requests this Honorable Court to enter a judgment in its favor and against Axis including awarding Power its damages in excess of the retained limit, the costs of this action and such other and further relief as this Court may deem just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Date: July 17, 2018

        POWER CONSTRUCTION COMPANY, LLC

        By: /s/ Jeffrey B. Charkow
            One of its attorneys

Jeffrey H. Winick
Jeffrey B. Charkow
Harris Winick Harris LLP
333 W. Wacker Drive
Suite 2060
Chicago, IL 60606
(312) 662-4600